UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------- X
                                             :

ProActive Capital Partners, LP,           :

                                 :      Case No. 1:22-cv-4654
                          Plaintiff,     :

                                 :

                  -against-       :      **VERIFIED COMPLAINT**
                                 :

Sysorex, Inc.,                        :

                                 :

                           Defendant.    :

                                 :
---------------------------------------------- X

      ProActive Capital Partners, LP ("ProActive Capital" or "Plaintiff"), by its attorneys, Sullivan & Worcester LLP, for its Complaint against Sysorex, Inc. ("Sysorex" or "Defendant"), states as follows:

## NATURE OF THE ACTION

      1.     This is an action to: (a) obtain injunctive relief directing Defendant to honor a stock conversion notice served by Plaintiff; (b) recover damages based on Defendant's breach of the Transaction Documents (as defined herein) between Plaintiff and Defendant; and (c) obtain a declaratory judgment against Sysorex clarifying, affirming and declaring that (i) ProActive Capital received the Debenture (as defined herein) in exchange for good and valuable consideration; (ii) ProActive Capital has the right to demand and receive common stock and payments due and owing under the Debenture; and (iii) Sysorex violated its duties and obligations to act in accordance with the Debenture by failing to honor ProActive Capital's rights.

2.      Defendant has intentionally defaulted on the transactional documents at issue in this case and, to date, has ignored and refused to honor Plaintiff's lawful demand for stock conversion, per the terms of the Transaction Documents.

3.      Defendant has begun defaulting on its debts.  On May 5, 2022, Defendant filed a Form 8-K stating that "[Sysorex] has depleted substantially all of its authorized shares" and that "[t]he foregoing resulted in the Company's inability to process approximately $1,400,000 of pending conversions[.]"  Defendant's admission of breach, covering the Debenture (as defined herein) in this case, is a primary basis for this action.

4.      The parties agreed, as set forth in the Debenture, that ProActive Capital would be entitled to preliminary injunctive relief in the event Sysorex failed to deliver stock upon receipt of a conversion notice.  As set forth in paragraph 9(g) of the Debenture:

> The [Defendant] acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the [Plaintiff] and that the remedy at law for any such breach may be inadequate. The [Defendant] therefore agrees that, in the event of any such breach or threatened breach, the [Plaintiff] shall be entitled, in addition to all other available remedies, to an injunction restraining any such breach or any such threatened breach, without the necessity of showing economic loss and without any bond or other security being required.

5.      Plaintiff now seeks, in addition to relief on its clear-cut breach of contract claims, to immediately enforce the agreed upon injunctive relief as set forth in the transactional documents.

## THE PARTIES

6.      Plaintiff ProActive Capital Partners, LP is a Delaware limited partnership with its principal place of business at 150 East 58th Street, New York, New York 10155.  ProActive Capital is a private company that invests in securities and related instruments.  The partners of ProActive Capital are all domiciled in New York State.

4854-0380-1379, v.1

7.      Defendant Sysorex, Inc. is a Nevada corporation with its principal place of business at 13880 Dulles Corner Lane, Suite 175, Herndon, Virginia 20171.  Defendant is a publicly traded company on the OTCQB Markets whose shares are traded under the ticker symbol "SYSX."  According to its public filings, Defendant is a data center owner and operator that specializes in mining Ethereum.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over Plaintiff's claims in this action pursuant to 28 U.S.C. § 1332(a)(2) because Plaintiff is a citizen of Delaware and New York and Defendant is a citizen of Nevada and Virginia, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties have designated this District as the stipulated venue for adjudication of their disputes.

10.     Defendant has consented to personal jurisdiction pursuant to the written instruments at issue herein.  Specifically, Section 9(d) of the Debenture that Sysorex issued in favor of ProActive Capital on or about August 13, 2021 (defined in further detail below), provides that:

> Each party agrees that all legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective Affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts").  Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding.

3

## FACTUAL BACKGROUND

11.     Pursuant to a private placement offering that Defendant consummated (the "Offering"), Defendant entered into a Securities Purchase Agreement dated July 7, 2021 (the "SPA") with Plaintiff and thirty-nine other accredited investors (collectively, the "Investors").

12.     In connection with the Offering and pursuant to the terms of the SPA, on or about August 13, 2021, each Investor purchased from Defendant: (i) a 12.5% Original Issue Discount Senior Secured Convertible Debenture (the "Debenture" or, collectively, the "Debentures"); and (ii) a Warrant to purchase shares of Defendant common stock (the "Warrant" or, collectively, the "Warrants").  In addition, each of the Investors entered into a security agreement and a lock-up agreement (together with the Debenture, the Warrant, and the SPA, the "Transaction Documents").  Plaintiff's Debenture has a face amount of $112,500, and Plaintiff's Warrant is issuable for 52,681 shares of Defendant's common stock.  Copies of Plaintiff's Transaction Documents are annexed hereto as Exhibit A.

13.     Defendant had the ability to repay amounts owed in stock or in cash, depending on its cash needs, thereby providing Defendant with an alternative to paying Plaintiff the face value of the Debenture.

14.     Section 4(a) of the Debenture gives the Investors, including Plaintiff, the right to convert the Debenture into shares of common stock of the Defendant by submitting a notice of conversion (a "Notice of Conversion").  Section 4(c)(ii) provides that Defendant must honor a Notice of Conversion within two business days of receipt.

15.     On July 12, 2021, Defendant filed a mandatory Form 8-K with the Securities and Exchange Commission disclosing the key terms of the issuance of the Debenture, including that

"[t]he Debentures are convertible into shares of Common Stock at any time following the date of issuance."

16.     To ensure Plaintiff's investment was protected, Defendant represented and warranted, under Section 3.1(f) of the SPA, that on or before 60 days from the date of the SPA, it would reserve from its authorized shares a required minimum equal to at least three times the maximum amount of shares issuable pursuant to the Transaction Documents (the "Required Minimum"). The representation of the three times reserve was a material representation that induced Plaintiff to invest.

17.     The SPA and the Debenture each contain similar provisions that prevent Defendant from favoring any Investors by repaying some Investors but not others. Section 4.14 of the SPA and Section 12 of the Debenture each provide:

> Equal Treatment of Purchasers. No consideration (including any modification of [any Transaction Documents]) shall be offered or paid to any [Investor] to amend or consent to a waiver or modification of any provision [of the Transaction Documents] unless the same consideration is also offered to all of the parties to the [Transaction Documents]. Further, the Company shall not make any payment of principal or interest on the Debentures in amounts which are disproportionate to the respective principal amounts outstanding on the Debentures at any applicable time.

18.     Another critical component of the contemplated transaction is the negative covenants set forth in the Debenture. These covenants effectively restrict what Defendant can and cannot do while the Debenture is outstanding. Chief among those restrictions are: (i) in Section 7(a), adding new debt without the approval of Cavalry Fund I LP (as the appointed agent under the Security Agreement); and (ii) in Section 7(d), taking cash to repurchase common stock.

19.     Section 2(a) of the Debenture provides that:

> The [Defendant] shall pay interest to the [Plaintiff] on the aggregate unconverted and then outstanding principal amount of this Debenture at the rate of 8% per annum, payable quarterly on January 1, April 1, July 1, and October 1, beginning

on the first such date after the Original Issue Date, on each Conversion Date (as to that principal amount then being converted) and on the Maturity Date (each such date, an "Interest Payment Date") (if any Interest Payment Date is not a Business Day, then the applicable payment shall be due on the next succeeding Business Day), in cash (subject to the [Plaintiff's] right, in its sole discretion, to convert any accrued but unpaid interest into shares of Common Stock in accordance with Section 4).  To the extent that interest owing for any given calendar quarter is in an amount less than $1,000, the [Defendant] shall be permitted to add the interest to the outstanding principal balance and, in such event, shall not be required to make payment to the [Plaintiff] for that calendar quarter.

20.      Section 8(a)(i) of the Debenture provides that it shall be an "Event of Default" if there is

any default in the payment of (A) the principal amount of any Debenture or (B) interest, liquidated damages and other amounts owing to [Plaintiff] on any Debenture, as and when the same shall become due and payable (whether on a Conversion Date or the Maturity Date or by acceleration or otherwise) which default, solely in the case of an interest payment or other default under clause (B) above, *is not cured within 3 Trading Days*[.]  (emphasis added)

21.      Section 8(a)(x) of the Debenture provides that it shall be an "Event of Default" if Defendant fails to deliver common stock to Plaintiff upon receipt of a Notice of Conversion from Plaintiff or in the event that Defendant publicly announces its intention not to honor requests for conversions.

22.      Section 8(a)(ii) of the Debenture provides for an Event of Default in the event that Defendant fails to "observe or perform any other covenant, obligation, or agreement contained in the Debentures . . . or in any Transaction Document[.]"

23.      Section 8(a)(iv) of the Debenture provides that it shall be an "Event of Default" if any material representation or warranty made under any of the Transaction Documents becomes untrue or incorrect in any material respect.

24.     These provisions seek to ensure that Defendant does not use its cash for purposes inconsistent with the obligations set forth in the Debenture and were material to Plaintiff's decision to invest.

Defendant's Default

25.     On April 12, 2022, Plaintiff submitted to Defendant via electronic mail a Notice of Conversion (the "First Notice") in accordance with Section 4(a) of the Debenture.

26.     Defendant refused to acknowledge receipt.

27.     After several phone calls and emails went unanswered, Plaintiff became concerned and, on April 13, 2022, rescinded the First Notice in accordance with Section 4(c)(iii) of the Debenture.

28.     On April 29, 2022, Plaintiff again exercised its rights and submitted a new Notice of Conversion with an immediate effective date via electronic mail (the "Conversion").

29.     Again, Defendant was nonresponsive.

30.     On May 2, 2022, Plaintiff learned that Defendant did not have enough outstanding shares reserved to honor the Conversion.

31.     On or about May 6, 2022, Plaintiff sent to Defendant via electronic mail a Notice of Default and Acceleration informing Defendant of its failure to perform under the Transaction Documents.  A copy of that default notice is annexed hereto as Exhibit B.

32.     Plaintiff received no response or other correspondence from Defendant nor was any payment made.

33.     Upon information and belief, Defendant has been honoring the conversions of other investors despite claiming to lack sufficient outstanding shares to honor Plaintiff's Conversion.   Defendant has thereby made payments on the Debentures in amounts

4854-0380-1379, v.1

disproportionate to the principal amounts outstanding on the Debentures.  Defendant's unequal treatment of the Investors violates Section 4.14 of the SPA and Section 12 of the Debenture and therefore constitutes an additional Event of Default under the Transaction Documents.

34.     To date, the Conversion has not been honored in breach of the Transaction Documents and in direct contravention of Defendant's regulatory disclosures.

35.     Thus, as of May 3, 2022, which is two business days after Defendant received the Conversion (the "Date of Default"), Defendant was in default under the Debenture.

<u>Defendant's Delay in SEC Filings</u>

36.     General Instruction A.1 of Form 8-K provides that: "Form 8-K shall be used for current reports under Section 13 or 15(d) of the Securities Exchange Act of 1934, filed pursuant to Rule 13a-11 or Rule 15d-11 and for reports of nonpublic information required to be disclosed by Regulation FD (17 CFR 243.100 and 243.101)."

37.     General Instruction B.1 of Form 8-K provides that: "A report on this form is required to be filed or furnished, as applicable, upon the occurrence of any one or more of the events specified in the items in Sections 1 - 6 and 9 of this form.  Unless otherwise specified, a report is to be filed or furnished within four business days after occurrence of the event.  If the event occurs on a Saturday, Sunday or holiday on which the Commission is not open for business, then the four business day period shall begin to run on, and include, the first business day thereafter."

38.     Item 2.04 of Form 8-K requires a public issuer to provide disclosure regarding: "Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off-Balance Sheet Arrangement."

39.     Defendant was required to file a Form 8-K advising the market of its default on the Debenture no later than May 12, 2022.

40.     Section 5.4 of the SPA provides in pertinent part that: "To the extent that any notice provided pursuant to any Transaction Document constitutes, or contains, material, non-public information regarding the [Defendant] or any of the Subsidiaries, the [Defendant] shall simultaneously file such notice with the Commission pursuant to a Current Report on Form 8-K."

41.     The failure to file a timely Form 8-K to disclose the default on the Debenture was itself a separate Event of Default under the Transaction Documents.

<u>The Parties' Agreed-Upon Relief</u>

42.     Section 8(b) of the Debenture provides that in an Event of Default:

…the outstanding principal amount of this Debenture, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration, shall become, at the [Plaintiff's] election, immediately due and payable in cash at the Mandatory Default Amount.  Commencing upon the occurrence of any Event of Default, the interest rate on this Debenture shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law.  Upon the payment in full of the Mandatory Default Amount, the [Plaintiff] shall promptly surrender this Debenture to or as directed by the [Defendant].  In connection with such acceleration described herein, the [Plaintiff] need not provide, and the [Defendant] hereby waives, any presentment, demand, protest or other notice of any kind, and the [Plaintiff] may upon the expiration of any applicable grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law.  Such acceleration may be rescinded and annulled by [Plaintiff] at any time prior to payment hereunder and the [Plaintiff] shall have all rights as a holder of the Debenture until such time, if any, as the [Plaintiff] receives full payment pursuant to this Section 8(b).  No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.

43.     The Debenture defines the "Mandatory Default Amount" as:

the sum of: (a) 130% of the outstanding principal amount of this Debenture, plus (b) 130% of accrued and unpaid interest hereon, and (c) 130% of all other amounts, costs, expenses and liquidated damages due in respect of this Debenture.

44.     As a result of Defendant's default, Plaintiff is entitled to recover the "Mandatory Default Amount" set forth in Section 8(b) of the Debenture, plus interest at the rate of 18% per annum on the foregoing, also as required by Section 8(b), as well as its attorneys' fees.

45.     The amount due and owing on the Debenture as of the filing of this Complaint is in excess of $100,000, and will continue to increase as interest accumulates as of the Date of Default.

## FIRST CLAIM FOR RELIEF
### (Injunction to Deliver Shares)

46.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 45 as if fully set forth herein.

47.     Rather than abiding by its obligations set forth in the Conversion to deliver common stock to Plaintiff according to the terms and conditions of the Transaction Documents, Defendant ignored and rejected the Conversion.

48.     As a direct and proximate result of Defendant's breaches of its duties and obligations, and instead obstructing and denying Plaintiff's right to convert its Debenture, receive the shares of Defendant's common stock called for in the Debenture, and sell such shares, Plaintiff was unable to recover amounts owed by Defendant in order to reduce Plaintiff's principal on the Debenture.  Defendant, on information and belief, could not repay its debt, including debt owed to Plaintiff, through its dwindling cash flow.

49.     In Defendant's Form 8-K dated May 5, 2022, Defendant acknowledged that it has depleted substantially all of its authorized shares.  As such, Defendant has admitted that it is in breach of its contractual obligations to Plaintiff to reserve the Required Minimum.

50.     The parties agreed in the Transaction Documents that Defendant's failure to honor Plaintiff's conversion requests would entitle Plaintiff to equitable relief without the need to make any additional showing.

51.     Plaintiff will lose all of its bargained-for benefit if it must wait until the end of trial to receive the stock owed under the Debenture.  Defendant has agreed under Section 9(g) of the Debenture that Plaintiff is entitled to an injunction restraining any breach or threatened breach of its obligations under the Debenture to avoid irreparable harm without the necessity of showing economic loss and without any bond or other security being required.  The balance of the equities tips decidedly towards Plaintiff and serves the public interest as contracts should be honored by contracting parties.

52.     Plaintiff is entitled to injunctive relief requiring Defendant to honor the stock conversions served by Plaintiff by delivering forthwith 15,435,409 shares of validly issued, fully paid, and non-assessable shares of common stock of Sysorex to Plaintiff.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract — SPA)

53.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 52 as if fully set forth herein.

54.     The SPA is a valid and binding contract, enforceable according to its terms.

55.     Plaintiff has performed all of its obligations under the SPA.

56.     As a direct and proximate result of Defendant's multiple breaches of the SPA, Plaintiff is entitled to recover all sums due under the SPA in an amount to be proven at trial, but which is estimated to exceed $100,000, plus attorneys' fees.

4854-0380-1379, v.1

### THIRD CLAIM FOR RELIEF
**(Breach of Contract — Debenture)**

57.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 56 as if fully set forth herein.

58.     The Debenture is a valid and binding contract, enforceable according to its terms.

59.     Plaintiff has performed all of its obligations under the Debenture.

60.     As a direct and proximate result of Defendant's multiple breaches of the Debenture, Plaintiff is entitled to recover all sums due under the Debenture in an amount to be proven at trial, but which is estimated to exceed $100,000, plus attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment)**

61.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 60 as if fully set forth herein.

62.     Section 4(a) of the Debenture provides that, upon an Event of Default, the conversion price under the Debenture shall be the lesser of: (i) the conversion price in effect thereunder; and (ii) 50% of the average VWAP of Defendant's Common Stock during the five business days prior to such conversion.

63.     Plaintiff attempted to convert its stock pursuant to the above provisions, but Defendant ignored and refused to honor the conversion.

64.     Plaintiff seeks a judgment from the Court clarifying, affirming and declaring that: (a) ProActive Capital received the Debenture in exchange for good and valuable consideration; (b) ProActive Capital has the right to obtain common stock or demand and receive payments due and owing under the Debenture; and (c) Sysorex violated its duties and obligations to act in accordance with the Debenture by failing to honor ProActive Capital's rights.

4854-0380-1379, v.1

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ProActive Capital Partners, LP demands judgment against Defendant as follows:

(a)     An injunction directing Defendant to issue immediately 15,435,409 shares of its common stock to ProActive Capital in order to honor the Conversion submitted by ProActive Capital on June April 29, 2022;

(b)     Money damages against Sysorex on its breach of contract claims for failure to make required payments under the Transaction Documents, with the Mandatory Default Amount due on acceleration of the Debenture pursuant to Section 8(b) of the Debenture, in an amount to be determined at trial;

(c)     A declaratory judgment clarifying, affirming and declaring that: (1) ProActive Capital received the Debenture in exchange for good and valuable consideration; (2) ProActive Capital has the right to demand and receive common stock and payments due and owing under the Debenture; and (3) Sysorex violated its duties and obligations to act in accordance with the Debenture by failing to honor ProActive Capital's rights;

(d)     Attorneys' fees and costs in bringing this action in accordance with the terms of the Transaction Documents; and

(e)     Such other relief as this Court may determine as fair and just.

Dated:   New York, New York          Respectfully submitted,
         June 2, 2022

                                     SULLIVAN & WORCESTER LLP
                                     By: _____
                                         David E. Danovitch

                                     1633 Broadway, 32nd Floor
                                     New York, New York 10019
                                     Telephone:  (212) 660-3000
                                     Facsimile:   (212) 660-3001
                                     ddanovitch@sullivanlaw.com

                                     Michael T. Dyson (*pro hac vice pending*)
                                     1666 K Street, NW, 7th Floor
                                     Washington, D.C. 20006
                                     Telephone: (202) 775-1200
                                     Facsimile: (202) 293-2275
                                     mdyson@sullivanlaw.com

                                     *Attorneys for Plaintiff*

## **<u>VERIFICATION</u>**

I, Jeffrey S. Ramson, Manager of ProActive Capital Partners, LP, hereby state that I am personally familiar with the facts and circumstances giving rise to this Verified Complaint, that I have read this Verified Complaint, and that the facts stated in the Verified Complaint are true to my own knowledge, except those facts stated as to information and belief, and as to those facts, that I believe them to be true.

Signed under the penalties of perjury this __2nd__ day of June, 2022.

_____
Jeffrey S. Ramson
Manager, ProActive Capital Partners, LP