UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
PROACTIVE CAPITAL PARTNERS, LP,

                Plaintiff,

        - against –

SYSOREX, INC.,

             Defendant.

------------------------------X

**MEMORANDUM AND ORDER**

22 Civ. 4654 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


    This case arises out of a securities purchase agreement (the "SPA") that plaintiff Proactive Capital Partners, LP ("plaintiff" or "Proactive") entered into on July 7, 2021 with defendant Sysorex, Inc. ("defendant" or "Sysorex") to purchase a convertible debenture with a face value of $112,500 (the "Debenture").  ECF No. 1 ("Compl.") ¶¶ 11-12.  Plaintiff commenced this action by filing a complaint on June 3, 2022, asserting claims for breach of contract, injunctive relief, and declaratory judgment based on defendant's failure to convert the Debenture into shares of common stock as required by the agreement governing the Debenture (the "Debenture Agreement").  Id. ¶¶ 46-64. On July 14, 2022, defendant answered the complaint.  ECF No. 15.  The parties agreed upon a discovery scheduling order on September 30, 2022, which was subsequently revised on March 23, 2023 and July 14, 2023.  See ECF Nos. 21, 26, 30.

However, on August 14, 2023, defense counsel filed a motion to withdraw and a motion to seal the accompanying memorandum of law and declaration.  ECF Nos. 31-34.  This Court granted both motions on August 23, 2023 and directed defendant to retain new counsel within 30 days, advising that corporate parties may not proceed pro se and that defendant's failure to appear by counsel would result in the entry of a default judgment against defendant.  ECF No. 37 at 1-2 (citing Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983)).

On October 6, 2023, after defendant failed to retain new counsel, the Clerk of Court issued a certificate of default.  ECF No. 43.  On January 5, 2024, plaintiff moved for the entry of a default judgment.  ECF Nos. 44, 45 ("Mot.").  For the reasons set forth below, that motion is granted.  However, as will be explained, plaintiff is not entitled to all of the relief sought.

"[I]t is well established that while a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012) (internal quotations marks omitted and alteration incorporated).  Instead, "[t]here must be an evidentiary basis for the damages sought by

-2-

plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." Id.; see Fed. R. Civ. P. 55(b)(2).  The plaintiff bears the burden of establishing its entitlement to the relief sought.  See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc., No. 12 Civ. 6249 (ALC) (HBP), 2018 WL 1587058, at *5 (S.D.N.Y. Mar. 28, 2018).  A hearing on damages is not mandatory, and whether to hold one is committed to the district court's discretion.  See Cement & Concrete Workers Dist. Council Welfare Fund, 699 F.3d at 234.

It is clear that the Court has subject matter jurisdiction over this case, see United States v. Forma, 42 F.3d 759, 762 (2d Cir. 1994), and that the factual allegations contained in plaintiff's complaint establish a breach of contract.  However, plaintiff's application for breach of contract damages and attorneys' fees and costs requires further scrutiny.

## I.   Background[1]

As relevant here, Section 4(a) of the Debenture Agreement grants plaintiff the right to convert the Debenture into shares of

---

[1] These facts are drawn from the complaint and default judgment papers, and are now deemed admitted due to defendant's default.  See Caytas v. Maruszak, No. 06 Civ. 985 (LTS) (DCF), 2009 WL 249377, at *1 (S.D.N.Y. Jan. 30, 2009) ("On a motion for default judgment, the plaintiff's uncontested, well-pleaded facts shall be deemed admitted.").

common stock at a discounted rate at any point by submitting a notice of conversion.  Compl. ¶ 14.  Upon receipt of such a notice, defendant must deliver the converted stock to plaintiff within two business days.  Id.; Debenture Agreement § 4(c)(ii).

The Debenture Agreement provides for certain "Event[s] of Default," which include, among other things, the failure to honor a notice of conversion.  Compl. ¶¶ 20-24; Debenture Agreement § 8(a).  If an Event of Default has occurred, plaintiff has the right to recover "the outstanding principal amount of this Debenture, plus accrued but unpaid interest, liquidated damages and other amounts owing in respect thereof through the date of acceleration," which are due "immediately . . . and payable in cash at the Mandatory Default Amount."  Id. § 8(b) (emphasis added); Compl. ¶ 42.  The Mandatory Default Amount is defined as the sum of "(a) 130% of the outstanding principal amount of this Debenture, plus (b) 130% of accrued and unpaid interest hereon, and (c) 130% of all other amounts, costs, expenses and liquidated damages due in respect of this Debenture."  Id. ¶ 43; Debenture Agreement § 1.  Moreover, upon an Event of Default, the interest rate on the Debenture begins to accrue at an increased rate of "the lesser of 18% per annum or the maximum rate permitted under applicable law."  Id.; Compl. ¶ 42.  Finally, the occurrence of an

Event of Default impacts the discount rate at which plaintiff's Debenture converts to shares, such that plaintiff would be entitled to more shares if an Event of Default had transpired prior to submitting a Notice of Conversion.[2]  Debenture Agreement § 4(b).

In its default judgment papers, plaintiff asserts that it sent defendant a notice of conversion on May 4, 2022, requesting the conversion of $100,000 of the Debenture's principal to 15,312,258 shares at a conversion price of $0.0093 per share.[3] ECF 45-1, Ex. 1 ("Dyson Decl.") ¶ 11(h); ECF No. 45-1, Ex. A (the "Notice of Conversion").  On May 6, 2022, after defendant failed to respond or deliver the shares, plaintiff sent defendant a notice of default and acceleration informing Sysorex of its failure to honor plaintiff's Notice of Conversion.  Compl. ¶ 31; ECF 1-2

---

[2] The Debenture Agreement specifically provides that the conversion price "shall be equal to lesser of: (i) $18.00, subject to adjustment herein and (ii) 80% of the average of the [volume-weighted average price, or "VWAP"] of the Company's Common Stock during the 5 Trading Day period immediately prior to the applicable Conversion Date . . . (the 'Original Conversion Price'); provided however, that if at any time after the Original Issue Date there shall be an Event of Default, the conversion price in effect on any Conversion Date shall be the lesser of: (i) the $18.00, subject to adjustment herein, and (ii) 50% of the average of the VWAP of the Company's Common Stock during the 5 Trading Day period immediately prior to the applicable Conversion Date . . . (the 'Alternate Conversion Price')."  Debenture Agreement § 4(b).

[3] The Court notes that the version of events in default judgment papers differs slightly from the complaint.  Specifically, plaintiff alleges in the complaint that it submitted the Notice of Conversion on April 29, 2022.  Compl. ¶ 28. Second, in the complaint, plaintiff seeks 15,435,409 shares, slightly more than plaintiff seeks in its default judgment motion.  The Court will assess plaintiff's damages using the dates and numbers provided in its default judgment motion rather than the complaint, as both decrease the scope of damages faced by defendant in defaulting.

("Notice of Default").  Specifically, the Notice of Default demanded "the principal amount of the Debenture, plus unpaid interest, liquidated damages and other amounts owing in respect thereof through the date hereof, immediately due and payable in full in cash at the applicable Mandatory Default Amount."  <u>Id.</u> at 2.  Plaintiff also "expressly reserve[d] all rights, powers, privileges and remedies (including, without limitation, the right to demand payment of or to convert Debenture . . . ), under or in respect of the Debenture . . . in each case with respect to any Event of Default . . ."  <u>Id.</u>

## II.  Discussion

Based on these now admitted facts, plaintiff seeks breach of contract damages and attorneys' fees and costs.  We will address each category in turn.

### a. Breach of Contract Damages

Plaintiff first seeks breach of contract damages in the amount of $1,094,060.83 based on defendant's failure to honor plaintiff's conversion request pursuant to Section 4(b) of the Debenture Agreement.  Mot. at 6; Dyson Decl. ¶ 11.

Damages for breach of contract should seek to "place the nonbreaching party in as good a position as it would have been had the contract been performed."  <u>Bi-Econ. Mkt., Inc. v. Harleysville</u>

Ins. Co. of N.Y., 10 N.Y.3d 187, 195 (2008).  Because breach of contract damages are measured on the date of the breach, Simon v. Electrospace Corp., 28 N.Y.2d 136, 145 (1971), damages for the failure to honor a request to convert a note to publicly traded stock are calculated by multiplying the number of shares the lender attempted and was entitled to convert by "the mean between the highest and lowest quoted selling prices, as provided by the public exchange upon which the stock traded" on the day of the breach. LG Cap. Funding, LLC v. Cardiogenics Holdings, Inc., 787 F. App'x 2, 4 (2d. Cir. 2019).

Here, plaintiff contends in its default judgment motion that it properly submitted the Notice of Conversion on May 4, 2022, electing to convert $100,000 of the Debenture's principal to common stock.  Dyson Decl. ¶ 11(h).  In addition to the principal, however, plaintiff maintains that it was entitled to convert $142,404 to shares because of a separate Event of Default that plaintiff discovered on January 7, 2022 but that began when plaintiff entered the SPA on July 7, 2021.[4]  Dyson Decl. ¶ 11(e); Notice of Conversion.  According to plaintiff, it is entitled to convert to common stock not only $100,000 of the Debenture's

---

[4] Plaintiff contends that this Event of Default occurred "due to Sysorex's failure to disclose a material indebtedness at the time of the SPA's closing." Dyson Decl. ¶ 11(e).

principal amount, but also the Mandatory Default Amount of $130,000 plus the interest earned at a rate of 18% for a period of 294 days.[5]  Dyson Decl. ¶ 11(i).  Plaintiff also asserts in its motion papers that the relevant conversion price is $0.0093 based on the occurrence of the aforementioned Event of Default.  <u>Id.</u>  Dividing $142,404 by $0.0093, plaintiff claims that it was entitled to 15,312,258 shares.  <u>Id.</u>  Multiplying this number of shares by the average market price of defendant's stock on May 6, 2022 -- which plaintiff correctly calculates as $0.07145 -- plaintiff alleges breach of contract damages of $1,094,060.84.  <u>Id.</u> ¶ 11(j), (k).

Although plaintiff correctly calculates the relevant market price of the stock, for two reasons, plaintiff has failed to establish that it is entitled to damages for 15,312,258 shares. First, plaintiff does not identify a provision in the Debenture Agreement, and the Court cannot find one, that gives it the right to convert the Mandatory Default Amount plus 18% interest into shares rather than cash.  The existence of this Event of Default may have entitled plaintiff to, in essence, rescind its entire investment by recovering in cash the principal amount of and interest earned on the Debenture at the default rate, but not also

---

[5] Based on this, plaintiff calculated that defendant owes $19,110 of interest, of which $6,706 defendant already paid.  Dyson Decl. ¶ 11(i).

to convert this <u>increased</u> amount into shares.   Second, beyond the
failure to identify a contractual basis for the requested damages,
plaintiff did not allege in its complaint that an Event of Default
existed on the day the parties signed the SPA based on defendant's
failure to disclose a material indebtedness, but raised this issue
for the first time in its default judgment submission.  Dyson Decl.
¶ 11(e).  To the extent that plaintiff would seek to amend its
complaint to add allegations in this respect, plaintiff may not do
so at this stage of the litigation.

Accordingly, plaintiff was entitled to convert the principal
amount of $100,000 to shares at the "Original Conversion Price"
defined in the Debenture Agreement, i.e., 80% of the VWAP, rather
than at the "Alternate Conversion Price" of 50% of the VWAP.
Debenture Agreement § 4(b).  Plaintiff alleges that defendant's
placement agent, Joseph Gunnar & Co., LLC, calculated a VWAP of
0.0186.  Dyson Decl. ¶¶ 11(f), 11(i)(iv).  Thus, defendant should
have converted the principal amount of the Debenture at a
discounted rate of 80% of 0.0186, or $0.01488.  Dividing $100,000
by $0.01488, plaintiff should have received 9,570,161 shares on
May 6, 2022.  Thus, at an average share price of $0.07415,
plaintiff is entitled to $683,788, rather than its requested amount
of $1,094,060.84, in damages on its breach of contract claim.

**b. Attorneys' Fees and Costs**

Plaintiff also seeks $272,364.44 in attorneys' fees and costs based on the Debenture Agreement, which provides that the non-prevailing party will reimburse the prevailing party "for its reasonable attorneys' fees and other costs and expenses incurred with the investigation, preparation and prosecution" of a lawsuit seeking to enforce any provisions of the transaction agreements. SPA § 5.9; Debenture Agreement § 9(d); see also ECF No. 45-2 ("Dyson Decl. for Attorneys' Fees").   Thus, as the prevailing party, plaintiff is entitled to attorneys' fees and costs. NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).

The party seeking attorneys' fees bears the burden of demonstrating that the requested hours and hourly rates are reasonable and must provide a court with sufficient information to assess the fee application. Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 512-13 (S.D.N.Y. 2011).   The award of reasonable attorneys' fees is a matter within the sound discretion of the court for which "[t]here is no precise rule or formula." Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 188 F. Supp. 3d 333, 337 (S.D.N.Y. 2016).

-10-

"[A] reasonable attorney's fee is commonly understood to be a fee which represents the reasonable value of the services rendered." Diaz v. Audi of Am., Inc., 873 N.Y.S.2d 308, 311 (2008); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 183-84 (2d Cir. 2008) (a "presumptively reasonable fee" is determined by examining "what a reasonable, paying client would be willing to pay").  "It may be necessary to look beyond the actual fee arrangement between plaintiff and counsel to determine whether that arrangement was reasonable . . . or whether it was grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement." F.H.Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987).  Moreover, in the context of a contractual claim, "[i]t is appropriate for a court to consider the amount of fees requested in relation to the amount of damages at stake in the litigation." HSH Nordbank AG N.Y. Branch v. Swerdlow, No. 08 Civ. 6131 (DLC), 2010 WL 1141145, at *6 (S.D.N.Y. Mar. 24, 2010).  Where the application for fees is voluminous, a court may order an across-the-board percentage reduction in compensable hours if it finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative.  In re

<u>Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 226, 237-38 (2d Cir. 1987).

Here, plaintiff seeks $271,043.50 in attorneys' fees and $1,320.94 in costs and expenses based on 412.5 hours expended by Sullivan & Worcester attorneys and staff.  <u>See</u> ECF 45-2 ("Dyson Decl. for Attorneys' Fees") ¶¶ 7, 8.  In support of its application, plaintiff submitted (1) copies of the invoices that plaintiff has already paid counsel in connection with this lawsuit, <u>id.</u>, Exs. A-C; (2) 39 pages of timesheet entries for work billed but not yet invoiced, <u>id.</u>, Ex. D; and (3) a declaration stating the time expended by various attorneys and staff members, Dyson Decl. for Attorneys' Fees.

Having reviewed these materials, the Court concludes that plaintiff has failed to meet its burden of establishing the reasonableness of the requested attorneys' fees.  As an initial matter, plaintiff has not provided the Court with sufficient information for it to conduct its own analysis of whether the time expended was reasonable.  The only substantive work product with which the Court is familiar are plaintiff's complaint, the first certificate of default plaintiff entered before ultimately withdrawing it, defendant's answer, and the present default judgment motion, on which it is estimated that plaintiff's counsel

spent approximately 46, 10.5, 5.5, and 37 hours, respectively.[6] <u>See generally</u> Dyson Decl. for Attorneys' Fees, Ex. D.  According to the Court's calculation, this work totaled 99 hours and cost $64,006.50 -- a fraction of the $271,043.50 in fees sought. Plaintiff has made no submission explaining, and it is not obvious to the Court based on the nature of the suit, why it was reasonable or necessary to spend over 300 hours and $200,000 on discovery, which is the only other identified task performed.

Apart from the absence of any effort to explain the investment of hours that appear disproportionate to the straightforward claim of failure to honor a request for conversion, the Court has questions arising from the indications in the record that from the outset there would be issues concerning the collectability of any judgment obtained.  First, plaintiff alleges that it learned on May 2, 2022, prior to submitting its Notice of Conversion, that defendant did not in fact have enough shares to honor the conversion.  Compl. ¶ 30.  Presumably, this would have impacted not only plaintiff, but also the 39 other investors who participated in this private placement offering.  <u>Id.</u> ¶ 11.

---

[6] A number of counsel's time entries contain redactions for attorney-client privilege that made it impossible for the Court to determine the task, the number of hours expended, the name of the attorney or staff, or their hourly rate.  Thus, it is possible that these numbers underestimate the amount of time counsel spent on this work product.

Second, by September 30, 2022, when the parties entered into the first iteration of the discovery scheduling order, the price of defendant's common stock had declined over 16-fold to an average price of $0.0043, compared to $0.07145 on May 6, 2022.  Other than a brief period of volatility in the share price from July 14, 2023 to approximately October 1, 2023, defendant's stock has remained at a dramatically lower price as compared to its value on May 6, 2022.  Moreover, as noted above, <u>supra</u> 7, plaintiff maintains in its default judgment motion that it learned on January 7, 2022 that defendant had failed to disclose a material indebtedness in place at the time of the closing of the SPA, further indicating potential challenges to judgment collection.  While there may well be an adequate explanation for the investment of time under these circumstances, none has been proffered.

Finally, the Court observes that Proactive has paid less than ten percent of the fees sought -- specifically, $23,721 of $271,043.50.  Dyson Decl. for Attorneys' Fees, Ex A.  Again, how this impacts the determination of the reasonableness of the attorneys' fees sought has not been addressed.  At bottom, a reasonable fee is an amount "a reasonable, paying client would be willing to pay."  <u>Simmons v. New York City Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009).

Accordingly, if plaintiff wishes to pursue its claim for attorneys' fees in full, it is directed to submit further documentation to justify its application as it relates to the over 300 hours expended and $200,000 of fees incurred on work unrelated to the complaint, defendant's answer, or the motion for default judgment. In the absence of a further submission, the Court will enter a judgment for attorneys' fees attributable to the complaint, the review of the answer, and the preparation of the default judgment submissions.

Plaintiff also requests $1,320.94 in costs and expenses for filing fees, the use of PACER, process servers, and shipping costs pursuant to Section 9(d) of the Debenture Agreement and Section 5.9 of the SPA. Mot. at 6. Those expenses are routinely recoverable where a contract provides for an award of reasonable attorneys' fees and costs to the prevailing party in an action to enforce the contract. See, e.g., HSBC Bank USA, N.A. v. PAKS Holdings, LLC, No. 19 Civ. 10193 (PGG) (JLC), 2021 WL 667661, at *8 (S.D.N.Y. Feb. 22, 2021), report and recommendation adopted, 2021 WL 5042710 (S.D.N.Y. Oct. 28, 2021); Griffen Sec., LLC v. Citadel Car Alarms, LLC, No. 19 Civ. 3494 (VSB) (GWG), 2020 WL 3264173, at *6 (S.D.N.Y. June 17, 2020), report and recommendation adopted, 2020 WL 3791869 (S.D.N.Y. July 6, 2020). The Court has

reviewed the relevant invoices and finds the costs set forth are recoverable.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for default judgment is granted.  The plaintiff is awarded damages in the following amounts: $683,788 on Count I, $64,006.50 for attorneys' fees, and $1,320.94 for costs.  Consistent with this Memorandum and Order, plaintiff is directed, should it determine to do so, to submit further documentation to support its claim for attorneys' fees.


**SO ORDERED.**


Dated:   May 20, 2024
        New York, New York

        NAOMI REICE BUCHWALD
        UNITED STATES DISTRICT JUDGE

-16-